■ GERALD CONTENTO, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 43802.) — STALEY, JR., J. Appeal from a judgment in favor of claimant, entered September 19, 1966, upon a decision of the Court of Claims. On June 7, 1962 the State appropriated 14.04 acres of the claimant's land, pursuant to section 30 of the Highway Law, for the construction of Interstate Route 81. At the time of the appropriation the claimant owned 41.04 acres of land on the easterly side of Route 11 in the Town of Cortlandville, Cortland County, which the claimant acquired in two parcels. The first parcel consisting of 2.78 acres was acquired on March 6, 1951. The Tioughnioga River, which is about 50 feet wide in this area, flows through the parcel from its north to south boundaries. A portion of this parcel consists of a strip of land 36 feet wide along Route 11, 18 feet wide across the river, and 95 feet long. This strip provides access to a bridge 18 feet wide which extends across the river to the easterly portion of the parcel. The second parcel was acquired by claimant on September 2, 1953. This parcel, consisting of about 39 acres of land, lies easterly of the river and the first parcel. The easterly 12 acres of this parcel consists of steep hillside land, and the balance of claimant's land of about 29 acres was flat and level. The area appropriated was east of the river and extended across the claimant's flat, level land from north to south. The appropriation left the abutting property without right of access, thus causing about 14.2 acres east thereof, and .6 acre north thereof to be landlocked. At the time of the appropriation claimant was engaged in a variety of business activities on the property. His principal business was the operation of a scrap metal business and an automobile junk yard which was mainly conducted on the 2.78-acre parcel first acquired. About two or three acres of the second parcel was also used for this purpose. The claimant also bought and sold used cars and trucks; excavated and sold gravel from the center areas of his land; conducted a demolition business, and stored used materials on the land; conducted a modest ready-mix concrete business on the property; sold topsoil from the property; sold fertilizer, grain and feed, and operated a refuse collection business. The refuse collected was deposited in the areas where gravel had been excavated, and there burned and covered over. The 2.78-acre parcel was improved with a number of buildings, most of which were in poor condition and were used in the various business activities. The entire acreage was zoned for industrial use. The court found that the "highest and best use of claimant's land on the date of the appropriation was for industrial use including its use for conducting thereon an automobile junk yard and the other uses for which it was then employed." The court also found that the "highest and best use of claimant's remaining land after the appropriation was the same with its value, therefore reduced by the taking and resultant reduction in area." The

court found a before value of $64,425, and an after value of $30,500 with damages amounting to $33,925, of which $24,575 was direct damages, and $9,350 was consequential damages. On September 15, 1951 the Town of Cortlandville enacted a zoning ordinance which prohibited the operation of an automobile junk yard and storage business .within the town limits. On September 25, 1951 the town enacted another ordinance which prohibited the junk yard business, unless permission to operate such a business was obtained from the Board of Appeals. This ordinance also permitted the continuation of a nonconforming use, and established rules and regulations for extension or enlargement of a nonconforming use. The State concedes that the claimant had the right to continue his junk yard business on the 2.78-acre parcel which he first acquired, but contends that the court erred when it determined that claimant had established a pre-existing nonconforming junk yard use with respect to all of the flat, level land which he acquired in 1953. Carefully considered, however, the decision of the court determined that the highest and best use of the claimant's land was for industrial use. The fact that the court added the language "including its use for conducting thereon an automobile junk yard, and the other uses for which it was then employed" does not essentially add or detract from its finding of the highest and best use being an industrial use. Further, considering the testimony of the expert witnesses for both parties, it does not appear that they included any increment in value by reason of the junk yard use, although they did consider such use. In the main, however, their valuations were based on comparables devoted to an industrial use. Thus, although the court may have erred with regard to the claimant's right to use the entire flat, level portion of the property as a junk yard, it cannot be said that its determination of value was affected thereby. The decision of the court determined the before and after value of the entire property without any breakdown between the various areas. The State, using its own interpretation of the award, attempts to assign values to various portions. This breakdown, however, finds no support in the determination of the court except as to the area actually appropriated. In this regard the State assigns a value of $300 per acre to the 12 acres of hillside land, which valuation is not challenged on this appeal although its expert's valuation was $150 per acre for pasture use. The court determined that this area had a limited use for commercial and industrial purposes, and it is reasonable to assume that the court assigned a higher value for such use than it would have assigned for pasture use. The State further argues that the court found a higher value than the actual sales prices for two alleged superior industrial sales which were considered comparable by both appraisers. Whether or not these alleged superior industrial parcels were in fact superior, was a question of fact to be determined by the court and in considering the actual value of these parcels, the court could consider the cost required to fill such parcels to make them useable for the purposes of the buyer. Thus considered, the actual values of these alleged superior parcels, when improved, were considerably higher than the actual sales price. The State also contends that the trial court improperly awarded consequential damages of $100 per acre to the 12.2 acres of flat land remaining with access. This finding is supported by the testimony of the claimant's expert who considered a 12.2-acre parcel to have a lesser value per acre for industrial use than a much larger parcel. In our opinion, the findings of value by the court were well within the range of the testimony of the experts, and we find no reason to disturb its determination. Judgment affirmed, with costs. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Staley, Jr., J.